# COURT OF APPEALS

#### OF THE

## STATE OF COLORADO.

---

## SEPTEMBER TERM, 1899.

---

[No. 1623.]

OVERHISER ET AL. v. OVERHISER.

MUTUAL BENEFIT INSURANCE—BENEFICIARY—DIVORCED WIFE.

A mutual benefit insurance order provided in its by-laws that the bene-
ficiary should be named in the beneficiary certificate, and should be
confined to the family of the member or some person or persons
related to him by blood or dependent upon him, and that under no
circumstance should a certificate be issued to any other person, and
provided further, that in case of death of all the beneficiaries named
in the certificate before the death of the member, and his failure
to name another, the benefit should be paid to the legal heirs of
the member. A certificate was issued naming the member's wife
as the beneficiary, who, after the certificate was issued, procured a
divorce, and the husband died without naming any other benefi-
ciary. *Held*, that the procuring of the divorce was not the legal
equivalent of the death of the beneficiary so as to vest in the heirs
of deceased any right to the fund.

*Appeal from the District Court of Arapahoe County.*

VOL. XIV—1                                                    (1)

Messrs. TELLER, ORAHOOD & MORGAN, and Mr. CLAYTON C. DORSEY, for appellants.

Mr. R. D. THOMPSON and Mr. S. N. WHEELER, for appellee.

WILSON, J.

The sole question involved in this suit is the proper disposition of the fund arising from insurance in a mutual benefit association. In July, 1884, the Grand Lodge of the Ancient Order of United Workman of Colorado, New Mexico, and Arizona, issued to one of its members, George P. Overhiser, a beneficiary certificate, wherein it agreed that upon his compliance with the rules and laws of the order, it would upon his death pay to a person to be designated by him, the sum of $2,000. The beneficiary named in the certificate was the appellee, Lena Overhiser, who then bore to the member the relation of wife, and was so designated in said certificate. In July, 1895, Mrs. Overhiser was granted a divorce from said George P. Overhiser. Sometime in 1896, George P. Overhiser died, the beneficiary certificate being then in full force and effect, and no change having been made in the designated beneficiary, as it was the rightful privilege of George P. Overhiser to have had made if he had at any time desired. The association raises no question as to its liability to pay the money, and in fact has paid the same into court, and been dismissed as a party to the suit, leaving the court to adjust the rights to the fund between the contending claimants, who are the divorced wife, Lena Overhiser, and the appellants herein, the father, mother and sisters of the deceased. The entire constitution and by-laws of the association were not offered in evidence, but its object so far as the payment of insurance benefits is concerned, is stated in the answer of the association and not denied, to be "to pledge the members thereof to the payment of a stipulated sum to such beneficiary or beneficiaries as a deceased

member may have designated while living, under such restrictions and upon such conditions as the laws of the order may prescribe." Such by-laws as were offered in evidence, and as are necessary to be considered were as follows:

"The beneficiary shall be named in the beneficiary certificate, and shall be confined to one or more of the family of the member, or some person or persons related to him by blood or who shall be dependent upon him.

"Note. Under no circumstances can a certificate be issued to any other person, and should applicant have neither blood relative nor dependent (one claiming legal support) he cannot become a member of the order, as it has no mission to such person."

"16. Change of beneficiary. Any member holding a beneficiary certificate desiring at any time to make a new direction as to its payment, may do so by authorizing such change in writing on the back of his certificate in the form prescribed, attested by the Recorder, with the seal of the lodge attached, and by payment to the Grand Lodge the sum of fifty cents; but no change or direction shall be valid or have any binding force or effect until such change shall have been reported to the Grand Recorder, the old certificate, or sworn proof of its loss, filed with him, and a new beneficiary certificate issued thereon, and said new certificate shall be numbered the same as the old certificate. Provided, however, should it be impossible for the recorder of the subordinate lodge to witness the change desired by the brother, attestation may be made by a notary public or an officer duly authorized to administer oaths, seal to be attached in attest. If one or more of the beneficiaries shall die during the lifetime of the member, and he shall have made no other direction, the surviving beneficiary or beneficiaries shall be entitled to the benefit equally, unless otherwise provided in the certificate, and if all the beneficiaries shall die during the lifetime of the member, and he shall have made no direction, the benefits shall be paid to his heirs at law and if there be no such, then the benefits shall revert to the beneficiary fund of the Grand Lodge."

"4. In the portion of this fund, namely, $2,000, to which the beneficiaries of the deceased member are entitled, the members themselves have no individual property right; it does not constitute a part of their estates to be administered, nor have they any right in or control over the same, except the power to designate the person or persons to whom as beneficiaries the same shall be paid at the death of a member. The beneficiaries thus designated have no vested right in said sum until the death of the member gives such right, and the designation may be changed by the member in the method prescribed by the laws of the order, at any time before his death."

"5. Liability. No liability for the payment of any money from this fund shall arise by virtue of any beneficiary certificate membership, or certificate of membership, or otherwise, unless the member of the order named in such certificate shall, in every particular, while a member of the order, comply with all the laws, rules and requirements thereof; and shall, at time of death, be a member of said order in good standing ; and that the certificate by virtue of which the demand is made, shall not have been surrendered, or the right thereunder surrendered by the member, or said certificate, or his rights thereunder, canceled at his request."

Another by-law provided the order of payment to beneficiaries in the event that the beneficiaries named in the beneficiary certificate should die during the lifetime of the member, and he should have made no other direction therefor. This was as follows : In such case, "the benefit shall be paid to his widow, if living, at the time of his death ; if he leave no widow surviving him, then such benefit shall be paid, share and share alike to his children, his grandchildren living at the time of his death to take the share to which their deceased parents would be entitled if living ; if there be no children or grandchildren of the deceased member living at the time of his death, then said benefit shall be paid to his mother, if living, and if she be found dead at the time of his death, then to his father, if living, and should there be

no one living at the time of the death of said member en-
titled to said benefit under the provisions thereof, then the
same shall revert to the beneficiary fund of the Supreme
Lodge."

It further appeared from the evidence that when the de-
cree of divorce was rendered in favor of Mrs. Overhiser, she
was also allowed alimony in the sum of $900 to be paid in in-
stallments of $25.00 each, on the first of each month, com-
mencing with the 1st of July, 1895, until the full sum was
paid. It further appeared in evidence that at various times,
both prior and subsequent to the divorce, Mrs. Overhiser
had paid from her own funds some of the dues or assess-
ments necessary to keep the beneficiary certificate in force.
Judgment was in favor of Mrs. Overhiser, and from this the
heirs at law appeal.

The discussion in the elaborate briefs of counsel has taken
a wide range, embracing many questions which in the view
which we take of this case are not necessary to be considered
or determined. At the outset, it may be said as contended
by counsel for appellants, that in contracts of insurance,
such as the one under consideration, the beneficiary, whether
the one named in the beneficiary certificate, or one who in
some possible contingency may become such, has no vested
right or interest in the contract, or in the fund which may
arise therefrom, until the happening of the stipulated contin-
gency, namely, the death of the member. It may be further
conceded that unlike ordinary life insurance, in which the
policy itself contains the entire contract, a beneficiary certifi-
cate issued by a mutual benefit association of the character
in question, does not contain all the terms of the contract.
These must be gathered from, and consist of, the charter or
constitution of the society, its rules and by-laws, and the ap-
plication of the member for a beneficiary certificate, as well
as the certificate itself. We think, too, that it is equally
true and must be conceded in the absence of statute, as in
this case, that the rights of all parties growing out of the
contract must be measured and determined by the contract

itself, and that in so doing, the usual rules of construction applied to contracts generally must be observed. *Chartrand v. Brace*, 16 Colo. 22; *Royal Templars v. Curd*, 111 Ill. 288; *Golden Star Fraternity v. Martin*, 59 N. J. L. 207; *Worley v. Northwestern Masonic Aid Assn.*, 10 Fed. Rep. 227; Bacon, Benefit Societies, § 177.

As tersely expressed in the last cited authority, " Contracts of insurance have no particular sanctity over other kinds of agreements, and the same rules of interpretation apply to all alike." The contract in this case was substantially that upon the prompt payment to the association by George P. Overhiser of all dues and assessments thereafter made, and his observance of the rules of the society, the association would upon his death pay to the beneficiary designated in the contract, it being in this case Lena Overhiser, a certain sum of money. It is not contended that any of the conditions of this contract were violated by the insured member. On the other hand, it is conceded that it was in full force and effect at the time of the member's death. The only other restriction placed upon the member by the by-laws, rules or regulations of the order was that the party named in the certificate should come within one of three privileged classes. It must be conceded that this condition was also fulfilled, Lena Overhiser being at the time of the issuance of the certificate to the member, one of his family, namely, his wife. All the conditions, therefore, which the association exacted were specifically complied with. The contract was complete, and so far as the association was concerned, could not thereafter be defeated under the provisions of any rule or by-law, except by a failure to pay, and within the proper time, the dues and assessments which might be taxed against the member holding the certificate. The important question, however, is, what rights have the appellants, or any of them, to the fund arising from the payment of this certificate, and whence do they derive their rights? The contract, as we have seen, was complete with the member, by which it was stipulated that in the event of his death, Lena Overhiser should be the beneficiary.

According to the by-laws of the association, this right could be defeated, and the rights of appellants be initiated, in only one of two ways.   First, by George P. Overhiser exercising his privilege of changing the name of the beneficiary in the method prescribed.   This was never done or attempted. Second, by the death of Lena Overhiser.   She being alive, there can be no claim under this provision.   How, then, can it be said that any rights whatever of appellants, or any of them, to the funds in question, have attached or could attach ?   It is claimed that because Lena Overhiser before the death of George P. Overhiser by virtue of her divorce had departed from the privileged classes specified in the laws of the association to whom insurance benefits should accrue, she should be considered as if dead.   There might be some ground for this contention, if there were anything in the terms of the certificate or in the by-laws or constitution of the order which would indicate any such intention upon the part of the contracting parties.   We are unable to find any such.   When the beneficiary certificate issued, the contract was complete, and was such as the association had power to make.   The language used is not obscure nor of doubtful import, nor susceptible of a double construction.   By what authority then can a court undertake to say that the contract meant something other and further than was expressed ?   In construing contracts, the chief object is to ascertain the intention of the parties as understood by them,—that upon which their minds came together and agreed.   The arbitrary injection into it of new covenants, terms or conditions which might change its whole purport, although expressed in words of common usage and not of doubtful signification, would do violence to reason and to every rule of construction.   If we once enter the realm of conjecture, might we not with equal propriety and reason under the circumstances of this case assume that the designation of one as a beneficiary, who was at that time competent to be such under the rules and regulations of the society, was satisfactory to it, was a sufficient compliance with its rules, regulations and restrictions, and

was within the scope of its objects, as to assume without its being so specified in its constitution, by-laws, or the certificate, that in case before the death of the member there should be a departure by the designated beneficiary from the privileged classes, and no beneficiary had been substituted, then the same results should follow as upon the death of the beneficiary before the insurance matured, which results were explicitly set forth in the by-laws,—a part of the contract. Might we not with much greater reason assume, if we assume at all, that it was the intention in such case the insurance should lapse and the fund revert to the society?

In some of these voluntary associations, similar in character to this, it is provided that in case the beneficiary named in the certificate shall die or shall become incapacitated to take, then, in either event, the fund shall go to certain other parties or heirs. There is not claimed to be any such provision in the by-laws of this association. Again, in some it is provided that no benefits shall be paid to any person unless such person comes within one of certain classes. There is no such provision here. In others, the statute laws of the jurisdiction under which they are organized or operate, regulate the distribution of the fund, or impose restrictions upon the society in respect thereto. This is not the case here. The only requirement in this case, and that by the laws of the association, is that no certificate shall issue unless the beneficiary be named, and that such beneficiary be within one of certain classes. It will be seen at a glance that there is a wide distinction between a requirement that a certificate shall issue to only one of a certain class of persons, and one that payment can be made to only one of a certain class. We do not know by what authority we could read into this contract matters not expressed in it directly or indirectly. The words " die " and " death " are not words of doubtful signification. They have a fixed and definite meaning, and it would in our opinion do violence to all rules of construction to say that the contracting parties in this case contemplated some other meaning at the time when the contract was

entered into. According to the terms of the contract,—and in this we embrace and consider the language of the certificate, and the laws and rules of the association in force at the time the contract was executed and subsequently enacted,— the only contingency, namely, the death of the beneficiary named in the certificate, the happening of which would give the appellants or any of them any right to the fund in question, has never happened. We think, therefore, that the trial court did not err in its conclusions and in its judgment in this respect.

Counsel for appellants cite numerous authorities which they claim to support their position that the fund in this case should be disposed of as provided in the by-laws of the association in case the beneficiary named in the certificate should die before the member, and the latter had made no further direction as to its disposition. We do not think that any of them are applicable under the facts of this case. *Tyler v. Odd Fellows*, etc., 145 Mass. 135, was upon a certificate issued under a by-law which provided that after payment of the expenses of the funeral and last sickness "the balance should be paid to the person or persons designated by the member in his application for membership or last legal assignment, provided such person or persons are heirs or members of decedent's family." Here was a direct prohibition of payment to any person even though designated, unless such person was at the time of the death of the member an heir or a member of his family,—a case radically different from the one at bar.

*Schonfield v. Turner*, 12 S. W. Rep. (Tex.) 627, was decided upon the ground that the designated beneficiary was not at the time of his designation, and never was, a party capable of taking the insurance fund for his own use. This failing, it was held to be entirely consistent with the purposes of the order to make the same disposition of the money that would have been made if he had been dead. In this case it was held to go to the heirs of the member, as they existed at the time of his death. The divorced wife was of course not an heir, and could take nothing.

In *Keener v. Grand Lodge A. O. U. W.*, 38 Mo. App. 544, the beneficiary named in the certificate was not at the time of its issuance and never was within any of the classes prescribed by the constitution or laws of the order as capable of receiving the insurance benefits, and moreover was not within a class prescribed by the statute under which the order was organized and acting, as capable of receiving the benefits. In this case, too, it will be observed the association was not contesting the payment. It acknowledged its liability and paid the money into court for its distribution to the proper parties. The court held under these circumstances that a certificate having issued, and there being only a failure as to the beneficiary, the one named never having been competent to take it, it was in such case within the purpose of the association to give the fund to the heirs of the member. The reasoning was that a certificate naming such a beneficiary was similar in its effects to one in which no beneficiary had been named, or one in which a competent beneficiary had been designated by the deceased member, but who " with his knowledge died before him." In such cases, the court held that a forfeiture would not be declared, and the heirs would take. Whether the court was right or wrong in its conclusions is immaterial, because they do not apply to this case. Here a competent beneficiary was named, and she is yet living.

In *Rindge v. New England Mutual Aid Society*, 146 Mass. 286, it was held that the designation of beneficiaries in the certificate when issued was invalid because in contravention of the statute under which the corporation was organized.

The same is true of *Shea v. Massachusetts Benefit Assn.*, 160 Mass. 289.

*Order of Railway Conductors v. Koster*, 55 Mo. App. 186, strongly relied upon by appellants, is not in point. The court held under the circumstances of the case presented, the divorced wife was not entitled to receive the fund, but did not say who was entitled to it, nor what disposition should be made of it. The only question in the case at bar necessary

to be determined is, have the appellants, or any of them, a right under the facts presented to the fund? If they have not, then the case is settled, so far as this appeal is concerned. In such case, the disposition of the fund is a question solely between appellee and the association, in which appellants cannot be heard and in which they have no concern.

*Love v. Clune*, 24 Colo. 237, has no bearing upon the question to be determined in this case. There the chief question was whether a member insured in a mutual benefit association might at his pleasure change the beneficiary designated in the policy when the laws of the association were silent upon the subject. The court held that in such case the greater number and better reasoned authorities favored the rule that the beneficiary named could not be displaced without his or her consent. In that case the person who was attempted to be substituted as a beneficiary was neither a member of decedent's family, nor an heir nor a relative, and did not come within any of the classes enumerated in the charter of the association as capable of being beneficiaries of its bounty. For this additional reason, the court said that "the designation of her as a beneficiary was nugatory and ineffectual to nullify the former designation of the appellee." Neither in terms nor upon principle does the opinion in this case settle or affect the question here at issue. The designation in the substituted certificate was nugatory at and from the time it was made.

In their reply brief counsel for appellants urgently insist that the true rule applicable to this case, the one now sustained by the great weight of authority, is that laid down in the concluding clause of section 265, of the latest edition of Bacon on Benefit Societies, and which reads as follows:

"It may be taken as a settled rule of law under recent decisions that the designation of a person not entitled to take under the laws of the society or its charter, does not invalidate the contract, but only the designation, and the benefit will go either as the laws of the society provide in the case of the death of all the beneficiaries, or to next of kin." This

in no sense militates against any position which we have as-
sumed, or any views which we have advanced.   In this case
the designation was of a party at such time fully competent
under the laws and charter of the association to be beneficiary.
In this connection, it may be well to remark that in *Chartrand
v. Brace, supra,* where there was as in this case a beneficiary
certificate issued by the Ancient Order of United Workman
the court said, " The association so far as it is engaged in the
business of life insurance must be treated in law as a mutual
life insurance company."

The supreme court of the United States in considering a
policy issued by a mutual company, said: " We do not hesi-
tate to say, however, that a policy taken out in good faith
and valid at its inception, is not avoided by the cessation of
the insurable interest, unless such be the necessary effect of
the provisions of the policy itself." *Conn. Mut. Life Ins. Co.
v. Schaefer,* 94 U. S. 461.

The conclusion that none of the appellants are entitled to re-
ceive the benefit fund settles this appeal.   It is not necessary
to discuss or decide what right the appellee has to the fund,
if any, nor the question as to whether the insurance lapsed
by reason of the beneficiary's departure before its maturity
from the privileged classes, and thereupon should revert to
the order.   The association is not here complaining, and is
not before us at all.   It admits its liability to pay the money
to somebody, has paid it into the trial court, and has been dis-
missed from the suit.   The questions suggested, if they are
debatable at all, do not concern the appellants.   The deter-
mination of them either way would not affect their rights
under the conclusions which we have reached.

Under the views which we have announced, we can only
affirm the judgment, and this is accordingly done.

*Affirmed.*

BISSELL, P. J., not sitting.