MODERN WOODMEN OF AMERICA, Respondent, v. HARRY M. PATTERSON, Appellant, FRANK J. JOHNSTON, Respondent, Interpleader.

Kansas City Court of Appeals, April 2, 1917.

1. **BENEFICIARY: Dependent: Member's Death.** A beneficiary in a benefit certificate issued by a benefit society to the beneficiary as a "dependent" must be dependent at the time of the member's death.

2. ———: ———: **Stepson: Heir.** A stepson, twenty-five years old, physically strong, healthy and robust, able in every way mentally and physically to maintain and support himself is not a "dependent" on his stepfather so as to be a beneficiary in a life insurance benefit certificate where the by-laws of the association provide that a "dependent" may be made a beneficiary. In such case the deceased member's only son and heir, is entitled to insurance.

Appeal from Adair Circuit Court.—*Hon. C. D. Stewart,* Judge.

REVERSED AND REMANDED (*with directions*).

*Hughes & Hughes* for appellant.

*Weatherby & Frank* for respondent.

ELLISON, P. J.—Deceased Manton M. Patterson at the time of his death, was a member of the Modern Woodmen of America and held a benefit certificate of life insurance for $2000. The association admitted its

obligation to pay the certificate but understanding that the only son of deceased and his stepson were each claiming the money, it asked, and they were required to interplead. The judgment in the trial court was for the stepson.

Deceased was married and had one child, Harry, by his first wife. They were divorced in 1902 while Harry (one of the interpleaders) was a child five years old and the mother retained his custody. In the same year of the divorce, deceased married a widow, Mrs. Johnston, who had a son Frank, then about eleven years old, who is the other interpleader. So the contest is between deceased's son, nineteen years old, and his stepson, six or seven years older. The benefit certificate was taken out during his second marriage and that wife was made the beneficiary. She died in 1916 and shortly thereafter, in April, 1916, at request of deceased the stepson was substituted as beneficiary, related to deceased "as a dependent," and then in the following July, 1916, deceased died.

The by-laws applicable to the controversy are as follows:

"Sec. 45. No payment shall be made upon any benefit certificate to any person who does not bear such relationship as wife, surviving child, legally adopted child, heir, blood relative, or person dependent upon, or member of the family of the member, at the time of his death."

"Sec. 46. In the event of the disqualification of the beneficiary under the provisions of section 45 hereof, and if the member has failed to have another beneficiary named, then the payment shall be made to the widow, if no widow, to his children, etc."

The contest comes down to the single question whether the stepson interpleader was a dependent on deceased in the sense of the certificate, for if he is not, then under the last of these by-laws deceased's own son (interpleader Harry) as his heir, must prevail. At the time of the marriage to his mother the stepson as above stated was eleven years old, but at deceased's death, he

was twenty-five, strong, able bodied and in good health. For several years prior to his death deceased lived in different places in different States and in the meantime the interpleader stepson attended school of Osteopathy in Kirksville, Missouri. He testified that he worked for deceased a part of the time and received wages; but he also testified that after he was twenty-one years of age he looked to deceased for support and that deceased sent him money while at school. He admitted in his testimony that he was not claiming to be a dependent upon deceased on account of any mental or physical infirmity or from any lack of ability to make his own way and earn his own living, and that he considered himself fully able, mentally and physically, to maintain himself.

The evidence in interpleader Harry's behalf was that his mother was divorced from deceased for the latter's fault, that Harry was given in custody of his mother and she alone supported him up to the time he was sixteen when she was compelled to take him from school, since which time he had been at work earning a living.

In our opinion interpleader Johnston was not a dependent on deceased in the sense of the law. It is well settled that a stepfather is under no legal or moral obligation to support his stepson, and it is apparent from Johnston's own testimony that he was in point of fact, not dependent on him. He stated explicitly that there was no necessity that put him in dependence upon his stepfather. It is true that a legal obligation to support need not necessarily exist as a prerequisite to one being a dependent. [Keener v. Grand Lodge, 38 Mo. App. 543, 550.] But there must be, as the word implies, a dependence by the beneficiary upon the deceased member. [Grand Lodge v. Elsner, 26 Mo. App. 116; Brower v. Supreme Lodge, 87 Mo. App. 614; Western Com. Ass'n v. Tennant, 128 Mo. App. 541; Vaughn v. United Mechanics, 136 Mo. App. 362.] A character of dependence which does not exist in this case. [Morey v. Monk, 145 Ala. 301; Duvall v. Hunt, 34 Fla. 85, 100, 101; McCarthy v. N. E. Order of Protection, 153 Mass.

314, 318; Hodnett v. Boston & Albany Ry., 156 Mass. 86.] And such beneficiary must be a dependent at the death of the member. [Order of Ry. Conductors v. Koster, 55 Mo. App. 186; Murphy v. Nowak, 223 Ill. 301, 310.]

We are satisfied that the testimony of interpleader Johnston himself shows him to have no valid claim. The fund should therefore go to the son as heir of deceased. The judgment is therefore reversed and cause remanded with directions to enter judgment for him. All concur.