JOSEPHINE SMITH, Appellant, v. TRAVELERS PROTECTIVE ASSOCIATION OF AMERICA.—6 S. W. (2d) 780.

Division One, May 18, 1928.

*Johnson, Lucas & Graves* for appellant.

*Holland, Lashly & Donnell, J. M. Johnson* and *Donald W. Johnson* for respondent.

LINDSAY, C.—This is a suit upon a certificate, issued by the defendant as a Fraternal Beneficiary Association to Lawrence E. Smith, on November 13, 1911. It provides for the payment of benefits, in the sum of $5000, to Josephine Smith, wife of Lawrence E. Smith, upon his death, caused through external violent and accidental means. independently of all other causes.

In 1915 plaintiff was divorced from Lawrence E. Smith for his fault. Thereafter he remarried. In March, 1922, he and his second

wife, and some other persons, were passengers for hire upon an aircraft, of the type called a seaplane, which undertook to fly from Miami, in Florida, to the Island of Bimini, a British possession about sixty miles from the coast of Florida. When the plane was several miles short of its destination, trouble developed in the engine and the plane descended to the water. A high wind prevailed, the sea was rough, the plane was capsized, and all of the five passengers perished. Lawrence E. Smith and his wife, after clinging to the wreck of the plane for many hours, died from exhaustion, and exposure of the wind and water, the wife dying first. Another suit arising out of the death of a passenger upon the occasion mentioned was that of Wendorff v. Missouri State Life Insurance Co., 1 S. W. (2d) 99.

Lawrence E. Smith remained a member of the defendant association and had paid the required dues and assessments up to the time of his death, but no change had been made in the certificate, which stood as originally issued, carrying the provision: "Benefits in case of death payable to Josephine Smith, his wife."

At the time of the issuance of the certificate the act concerning Fraternal Beneficiary Associations, was in force. [Laws of Missouri 1911, p. 284.] The various sections of this act, with some changes, not applicable to the questions herein involved, appear as Article XV of Chapter 50, Revised Statutes 1919, Sections 6398-6437.

The theory of the petition was that plaintiff was the widow of Lawrence E. Smith, deceased, and entitled to recover as upon an ordinary policy of insurance for the death of Lawrence E. Smith by accident. She sued for $5000, the sum provided to be paid, and for a penalty for vexatious refusal to pay.

The answer alleged that the defendant was incorporated as a fraternal beneficiary society, under the Laws of Missouri, for the sole benefit of its members and their beneficiaries; that it had a lodge system with ritualistic form of work, and representative form of government; that it made provision for the payment of death benefits only to beneficiaries of deceased members who died in good standing in defendant's society, and only to such beneficiaries as belonged to a class designated in its constitution and by-laws; that the fund from which death benefits and the expenses of the society are defrayed is derived from dues and assessments collected from the members. Defendant also pleaded a provision of its articles of association as follows: "The payment of death benefits shall be confined to the wife, relatives by blood, to the fourth degree, ascending or descending, father-in-law, mother-in-law, son-in-law, daughter-in-law, stepfather, stepmother, stepchildren, children by legal adoption, or to a person or persons dependent upon the member." This provision follows the terms of Section 6403 of the statute. The de-

fendant also pleaded and set forth various other provisions of its articles, governing in cases wherein a beneficiary became ineligible, or a member died without leaving designated beneficiaries or heirs at law, also a provision governing the making of a change of beneficiary, and issuance of a new certificate. Defendant alleged that by reason of a judgment of divorce from Lawrence E. Smith, plaintiff became ineligible, and had no legal right under the contract to demand the benefit provided in the certificate. Defendant also pleaded as a defense a provision of the certificate that it should not be liable in case of the death of a member caused while the member was "acting as an aviator or balloonist, or soldier or sailor, by participation in war or riot, or aerial navigation, . . . or hazardous adventure . . . or by voluntary or unnecessary exposure to danger or to obvious risk of injury;" and alleged that the death of Lawrence E. Smith "was directly caused by his participation in aerial navigation and in hazardous adventure, and by his voluntary and unnecessary exposure to danger, or to obvious risk of injury;" and set forth the circumstances under which he lost his life.

The second amended reply, after admitting that defendant was organized and incorporated as a fraternal beneficiary society, alleged that by the terms of the certificate, and by defendant's method of doing business, it constituted itself an ordinary life insurance company, and that it received a fixed sum as premiums during the entire life of the policy; that through the payment of premiums by Lawrence E. Smith up to the time of his death, although divorced from plaintiff for his fault, she did not forfeit any right she had as his wife, or would have as his widow; that defendant, by acceptance of dues and assessments upon the certificate without changing the beneficiary, and with knowledge that plaintiff was divorced for the fault of Lawrence E. Smith, was estopped to deny the plaintiff is entitled to receive the benefits thereof. Plaintiff also alleged that Section 6401, Revised Statutes 1919, under which defendant claimed immunity from the provisions of Section 6337, from paying the sums claimed as penalty for vexatious refusal and delay, was void, as being in violation of Subdivisions 26 and 33 of Section 53 of Article IV of the Constitution; and that said Section 6401 was a special and not a general law.

A jury was waived and the cause tried to the court. The plaintiff offered a peremptory declaration of law, and also certain other declarations of law upon the issues, all of which were refused. Without request of either party the court filed a written statement of the grounds of his conclusion that judgment should go for defendant. The grounds so stated were that defendant is a fraternal beneficiary association under the Laws of Missouri; that Section 6401, Revised Statutes 1919, is constitutional; and that plaintiff, in obtaining a

divorce from her husband, lost her right to claim anything under the certificate sued on. There followed the statement that in view of those conclusions, it was unnecessary to pass upon the question whether the deceased was violating the terms of the certificate at the time of his death. The judgment entered was general in form, reciting that the court found the issues for the defendant, and adjudged that plaintiff take nothing by her suit. In due time plaintiff filed a motion for a new trial, and also motion for an entry *nunc pro tunc* showing what issues were passed upon, that is, motion for a judgment entry which should state the findings recited in the court's memorandum, and state also that for the reasons given the court did not pass on the other question, whether the deceased was violating the terms of the certificate at the time of his death. These motions were overruled, and plaintiff appealed.

Counsel for plaintiff urge that the court, sitting as a jury, was required to pass upon all the material issues in the case, and failed to do so.

I. There is no tenable theory which can be of avail to plaintiff under this head, which is a contention that the court committed reversible error in overruling the motion to enter a judgment for defendant based upon and specifically following the recitals in the court's opinion. This is so because the memorandum filed by the court briefly expressing his conclusions, decisive of the question of the plaintiff's right to recover, was not a paper in the case required by law. It was not a verdict, nor a finding as required by Section 1402, Revised Statutes 1919. It was entirely an optional act of the court, not called for by request of either party. [Hewitt v. Steele, 118 Mo. 463; M. K. & T. Ry. Co. v. Holschlag, 144 Mo. 253.] Being such, it does not constitute ground of impeachment of the sufficiency of the judgment appearing of record which disposed of all the issues in the case.

II. There are several other assignments of error, and there is discussion in the briefs of a number of questions. The eligibility of the plaintiff under the certificate is discussed at some length. However, the character of the certificate is the primary subject of the inquiry. Plaintiff's essential contention is, that the certificate is to be regarded as a regular old-line insurance policy. This is based upon the claim that defendant failed to prove that at the time the certificate was issued it was a fraternal beneficiary society. Whether it was such, it is urged, depends not upon defendant's charter, but upon its action and the method of conducting its business. It has been so held. [Andrus v. Accident Association, 283 Mo. 442; Murphy v. Brotherhood, 199

S. W. 730; National Union v. Marlow, 74 Fed. 775; Corley v. Travelers' Protective Association, 105 Fed. 854.]

On the trial, by stipulation, it was admitted that defendant was organized as a fraternal beneficiary association under the Laws of Missouri, and at all the times mentioned in the petition was duly licensed to do business as such in Missouri. A copy of defendant's articles, constitution and by-laws was admitted in evidence in connection with the testimony of Mr. Logan, its national secretary and treasurer.

The claim in the briefs for appellant as to the insufficiency of this evidence is directed toward two points. The first is that there was no showing of ritualistic form of work, in defendant's association, and the next is contained in the statement that "the only method of doing business shown 'was issuance of certificates for eleven dollars per annum which could be paid anually or semi-annually, in advance, on or before June 30th or December 31st.'" The exhibit introduced in evidence showed defendant's incorporation on June 7, 1890, and showed the articles of association, constitution and by-laws, and all amendments down to July 1, 1921. The only persons eligible as members were those "actively engaged" at the time of their application, in traveling in commercial pursuits. The articles, constitution and by-laws provide for an organization without capital stock, and organized and to be carried on solely for the mutual benefit of its members, and their beneficiaries, and not for profit. The constitution provides for a lodge system, and that there shall be a ritualistic form of work and representative form of government; and the provision made for payment of benefits is in accordance with Section 6402, Revised Statutes 1919. There is provision made for a supreme governing or legislative body over the organization in the States and Territories of the United States; provision for state divisions, and for branches, called "posts," within a state; and the provision is that members shall be elected, initiated and admitted in accordance with the constitution and by-laws, and in accordance with the prescribed ritualistic ceremony, and that persons become members through election, initiation and admission in some post of the organization. Each post is required to have one stated or regular meeting each month.

Laying aside, for the time being, the question of mere ritualistic form of work in the posts, an examination of the articles, constitution and by-laws of defendant shows that they embody and closely follow the provisions found in Sections 6398, 6399, 6400, 6402, 6403, 6404, 6405 and 6406, Revised Statutes 1919. Coming to the question of the existence of ritualistic form of work, to which plaintiff especially directs attention, we find that the constitution contains the provision that "the posts shall use the ritualistic form of work pre-

scribed by the National Board of Directors;'' and in the by-laws is the provision that ''the National Board of Directors shall prescribe a ritual which shall be the guide for the transaction of the business of the Post.'' There is also the provision that ''the National President shall, at the monthly meeting of the National Directors in July of each year, appoint for the ensuing year three directors as a committee on ritualistic form of work, which shall from time to time, make reports to the full Board of Directors.'' This is followed by the other provision that ''all members shall be admitted into the association by election and initiation into some Post in accordance with the ritual and constitution.'' In another place, there is the provision that: ''All meetings of the post shall be conducted in accordance with the ritual of the Association.'' And again, another provision that: ''All members shall be elected, initiated and admitted to the Post in accordance with the constitution, by-laws, rules and regulations, and prescribed ritualistic ceremonies of the association; that the ritual prescribed and adopted by the National Board of Directors, shall be observed and followed by the Post at regular meetings, and at all initiations of members.'' Aside from the provisions referred to in the constitution and by-laws, the only other testimony about a ritual or ritualistic ceremony or form of work was that given by Mr. Logan, the defendant's national secretary and Treasurer, who, in his direct examination, and in connection with his identification of the exhibit, made the following statement: ''I say this association had at all times, including when this certificate was issued and up to the death of Mr. Smith, a lodge system and ritual for the initiation of members, and members were initiated and became members through their initiation by the lodges, through the ritual I have produced in this book here.''

Counsel for plaintiff make the point that this statement was one of mere conclusion, and say that there is no ritual in the book—that is, the printed exhibit, containing the articles, constitution, and by-laws of defendant. It is true that there is not set forth in the exhibit the form of any ritualistic ceremony used in the initiation of members. As we have seen, it is plain that there is provision for the prescribing of a ritualistic form of work, and requirement that the ritual so prescribed shall be observed and followed by the post at its regular meetings, and in the initiation of members. The statement made by the witness is not wholly definite, and is a statement of what might be termed conclusions. It is not accurate in the literal sense that ''members were initiated and became members through their initiation by the lodges through the ritual *produced* in this book,'' because no ritualistic ceremony is set forth in the book, and presumably it would not be, if intended to be known only by members. However, it would not seem that this question was deemed of importance

by counsel for plaintiff at the time of the trial. The reply contains no general denial, but only a special denial of the defense that the deceased came to his death by means within the exception pleaded. No objection was made to the testimony, or the form of it, or that the statement was a mere conclusion of the witness, and no inquiry was made of the witness in the cross-examination, as to a ritualistic form of work in the posts. We conclude that the complaint now made upon this point comes too late.

III. The other objection is grounded upon the requirement of payment by the member of $11 annually. The theory is that this requirement makes the certificate an ordinary insurance policy. The provisions of defendant's constitution may be noticed in connection with the statutory requirements. The constitution provides that "the indemnity or benefit fund shall be established and maintained out of the annual dues, the membership fees and special assessments," reference being made to specific other sections applicable to each. The statute, Section 6406, Revised Statutes 1919, provides "the funds from which benefits shall be paid, and the funds from which the expenses of the society shall be defrayed, shall be derived from periodical or other payments by members of the society, and accretions of said funds." The same section provides that no such society shall be admitted to transact business in this State which does not provide for stated periodical contributions, sufficient to provide for meeting the mortuary obligations contracted when valued upon the basis named in Section 6422. Defendant's constitution provides that the annual dues shall be $11, apportioned as follows: $1.50 to the Post; $1.50 to the State Division; $6 to the benefit or indemnity fund; $1.90 to the general expense fund, and thirty cents which shall go to the magazine fund, or the reserve fund, as the member may in writing elect. There is a provision for a membership fee of $2 to be paid by the applicant eligible to active membership, and provision for a fee to be paid by associate members, who are not entitled to benefits in case of death by accident, nor eligible to vote in meetings or act as delegates in conventions. There is also a provision that "whenever the indemnity or benefit fund is reduced by the payment of indemnity claims or death losses to less than $5000, the Board of Directors may levy an assessment not to exceed $2 on each member of the association." This seems to be in accordance with the provisions of Section 6421 which requires the laws of such a society to provide that if the stated periodical contributions of the members are insufficient to pay all matured death and disability claims in full and to provide for the creation and maintenance of funds required by its laws, additional increased or extra rates shall be collected from the members to meet

such deficiency. These provisions did not make the certificate a regular insurance policy. [State ex rel. v. Allen, 306 Mo. 633.] The testimony was that the association had about 110,000 members; that the indemnity fund had fallen sometimes to near the sum of $5000, but it had not been necessary to levy an additional assessment upon the members. Without going farther in the comparison of the provisions of defendant's constitution and by-laws with the statutory requirements, we conclude that the provisions indicated substantially follow the requirements of the statute. This further may be said upon the question of insufficiency of the proof, that defendant in the issuance of the certificate sued on was a fraternal beneficiary society. It is admitted that it was so organized, and duly licensed as such at all times referred to in the petition.

The statute, Section 6421, requires annual reports of every society transacting business in this State, showing its condition, and it is required to furnish such other information as the Superintendent "may deem necessary to the proper exhibit of its business and plan of working." By other provisions (Sections 6424 and 6426) the Superintendent of Insurance is given full power to make examinations of a domestic or foreign society, and ascertain whether they are operating in compliance with the requirements of the statute. It has been held that the issuance of a license to a foreign society as a fraternal beneficiary association, is prima-facie evidence that it is such. [State ex rel. Knights and Ladies of Security v. Allen, 306 Mo. 651; Section 6413, R. S. 1919; Parker v. Sovereign Camp Woodmen of the World, 196 S. W. l. c. 427; Castens v. Fraternal Aid Union, 255 S. W. l. c. 969.] The ruling of the State Superintendent of Insurance is not conclusive upon the court, but under the admission that the defendant is duly licensed as a fraternal beneficiary association, and in consideration of its constitution and by-laws, which follow the statutory provisions for the government of such a society, and of the other evidence, we rule against the contention of plaintiff that there is insufficient proof of defendant's character as a fraternal and beneficiary association in the issuance of the policy sued on.

In passing, a brief reference is made to cases cited by counsel for plaintiff, under the contention that whether defendant is a fraternal beneficiary association depends not on its charter, but on its action and method of conducting business. In Andrus v. Accident Association, 283 Mo. 442, the question whether the defendant there was a fraternal beneficiary association was not in issue. It claimed to be operating, and issuing a policy under the assessment plan of insurance under Article III, Chapter 11, Revised Statutes 1909. The essential holding was that if a company, organized under Article III of the Insurance Laws of 1909, issued a policy not authorized by

that article, it could not avail itself of the exemptions provided for such companies in a suit on such policy. In Murphy v. Brotherhood, 199 S. W. 730, the question was not in the case. The answer did not plead that the defendant was a fraternal benefit society, and under the facts there considered, the defendant was held liable. In National Union v. Marlow, 74 Fed. 775, the statutes of Missouri of 1889 were under consideration. The provisions of the association regulating its membership and other matters were considered, and it was held to be carrying on the business of insurance on the assessment plan, but had not qualified itself under the laws of Missouri for doing a business of that kind. Among other things, the opinion noted that its members were not restricted to any particular class, calling or profession.

In Corley v. Travelers Protective Association, 105 Fed. 854, the defendant was organized under the laws of Missouri; and it was operating in the State of Kentucky. The assured became a member of a post in Kentucky. The case was decided in the year 1900, and had for its basis the provisions of the statutes of Kentucky. The provisions of the constitution of the defendant then in force were considered in view of the application of the Kentucky statutes. While in that case the defendant was held not to be a fraternal beneficiary association, and was held liable, the holding was founded upon consideration of the many points in which defendant had failed to bring itself within the provisions of the Kentucky statutes. Among the matters pointed out, attention was called to the fact that there was no provision in the constitution for persons becoming members through membership in any lodge or post. Notice was also taken of the fact, shown without objection, that the Superintendent of Insurance of Missouri had found that the defendant had not complied with the laws of Missouri applicable to fraternal beneficiary associations, and had refused a license in Missouri to defendant. In substance, it was found that the defendant in that case was neither organized nor licensed, nor conducting its business as a fraternal beneficiary association, in compliance with the statutes applicable to that form of organization.

IV. It is insisted that Section 6401, Revised Statutes 1919, is void because in violation of Subdivisions 26 and 33 of Section 53 of Article IV of the Constitution. Section 6401 is as follows:

"Except as herein provided, such societies shall be governed by this article and shall be exempt from all provisions of the insurance laws of this State, not only in governmental relations with the State, but for every other purpose, and no law hereafter enacted shall apply to them, unless they be expressly designated therein. [Laws 1911, p. 284.]"

This section, in substantially the same form, was part of Section 7109, Revised Statutes 1909, which, with the other sections constituting Article IX of Chapter 61, Revised Statutes 1909, was repealed by the Act of 1911. The provision of this section in its present form, or substantially as it has been for many years, in its application to certificates issued by fraternal benefit associations, has been before this court in numerous cases, without claim that it was invalid as being a special law violative of the Constitution. Its validity seems to have been accepted without question in Westerman v. Supreme Lodge, 196 Mo. 670, and in Armstrong v. Modern Brotherhood, 245 Mo. 153.

In Claudy v. Royal League, 259 Mo. 92, the validity of Article IX, Chapter 61, Revised Statutes 1909, of which Section 7109 was a part, was challenged as being a special law, in that it provided that fraternal and beneficiary associations should be exempt from the provisions of the general insurance laws of the State. This court said, l. c. 103: "The insurance statutes of this State are subdivided into articles, each by their terms applicable to certain classes of companies or associations. If, upon examination, these articles are found to be complete in themselves and they apply to the companies or associations therein designated as a class, then they are not inimical to the organic law as special legislation. We find that the article (Art. 9, Chap. 61) under consideration is creative and regulatory of fraternal beneficiary associations, that it is complete in itself and applicable to the associations named as a class; this being true it may well be the subject of particular legislation without violating the Constitution prohibiting the granting of special privileges to corporations." After discussing certain earlier cases, the conclusion was announced that the law was not violative of the Constitution.

In State ex rel. v. Trimble, 292 Mo. 1. c. 379, it was noted that in the particular case under discussion, there was no distinction in meaning between Section 7109, Revised Statutes 1909, and Section 6401, Revised Statutes 1919. In the later case of State ex. rel. Knights & Ladies of Security v. Allen, 306 Mo. 633, a case in Court en Banc, upon certiorari, the questions in issue were the force and application of the exemption under Section 6401, and the alleged conflict in the ruling of the Court of Appeals thereon. It was held that the relator was a fraternal beneficiary association, and that the exemption provided in the statute applied. The question of the constitutional validity of the law was not raised, and no reference was made to the ruling in the Claudy case. The opinion contains the following, l. c. 656: "It must be kept in mind that the fraternal beneficiary society law is a part of every certificate holder's contract, and by that law, the society's constitution and by-laws, charter and articles of association, and amendments thereof are part of that con-

tract. By the law and the contract the society is exempt from the general insurance law and any ruling which makes a society, when moving within its legal sphere, subject to the general law, conflicts with decisions of this court." Citation was made to State ex rel. v. Reynolds, 287 Mo. 1. c. 172.

In the case last mentioned it was said: "This statute (Art. XV, Chap. 50, R. S. 1919) contains, among other things, the section upon exemptions which we have shown constitutes an unequivocal restriction upon the application of the general statute above referred to, and confines the rights and powers of such association to the statute of its creation." It was further observed in the same opinion: "The regulation of the business of life insurance is, under our statute, variously subdivided, in that each article authorizes the organization, defines the nature and prescribes the manner of conducting the business of a certain class or kind of companies distinct from the others, and subject, in many particulars, on account of their character, to the law of their creation alone."

The Legislature, under the provisions of the act concerning fraternal beneficiary associations, not organized for profit and operating through a lodge system, intended to distinguish them from life and health insurance companies engaged in business for profit. The classification is founded upon a distinction stated in the law, that such associations are without capital stock; are not operated for profit; are operated under a lodge system with ritualistic form of work; the members belong to a special class and beneficiaries are confined to a definite class—to persons bearing one or another of the defined relations to the member. The classification of such associations is founded upon a distinction which is not capricious, arbitrary or unreasonable. [See Fidelity Mutual Life Association v. Méttle, 185 U. S. 1. c. 326.]

We have examined the cases cited by counsel for plaintiff in support of their contention that Section 6401 is a special law violative of the Constitution. In Woolley v. Mears, 226 Mo. 41, it was held that a statute which attempted to regulate only in cities containing 300,000 inhabitants or more, the subject of offering real estate for sale, and forbidding the offering of real estate for sale by an agent without consent of the owner in writing, was unconstitutional. It was so held because it was said: "There is no good reason which could be assigned why it should not be made applicable to all cities and other portions of the State."

Counsel cite State ex rel. v. Revelle, 257 Mo. 529. In that case the act approved March 9, 1911 (Laws 1911, p. 301) was held invalid. The first ground of the decision was that the title of the act was misleading. The other ground was that the act was invalid because it was an attempt to enact a special law by the repeal, at least

*pro tanto,* of a general law. The act undertook to authorize a plan of inter-insurance between individuals and corporations through an agent or "manager," appointed by the subscribers taking policies, and the act declared that the making of such contracts should "not constitute the business of insurance and should not be subject to the laws of this State relating to insurance." Of this act the court said, l. c. 538, that "it was fashioned so as to abrogate the application of the insurance laws to every policy issued in this State to a person, firm or corporation who should become a member of the body issuing the policy." And further spoke of the plan, l. c. 537, as "a state-wide plan with no other requirements as to membership than that the applicant shall insure his property and give the 'manager' the power to do all things, simply by using the name 'manager' which the member could do himself." There is nothing said in the opinion contrary to the view that the Legislature could properly create a class of fraternal beneficiary associations, defining their rights and powers, and restricting application upon them of the general statutes.

Aloe v. Mut. Life Assn., 164 Mo. 675, is another case cited. We are unable to see the application of the ruling in that case to the question here in issue.

Another case cited is State v. Miksicek, 225 Mo. 561. In that case the law held invalid as a special law, was one regulating bakeries, and relating to sanitation of buildings occupied for bakeries. The decision proceeded upon the theory that the legislative mind in the enactment of the law was specially directed to bakeries as a class, and sought to embrace every feature of the business done by that class; but, that certain sections were so framed as to require sanitation of the buildings and rooms of bread, biscuit and cake bakeries, while the proprietors of buildings used for pie, pastry and cracker bakeries, were exempt from its operation. The law was held invalid, because there was no reasonable ground for the distinction made.

We hold that the statute here in question is not violative of the constitutional provisions cited by counsel for plaintiff.

V. In view of the foregoing conclusion that the contract sued on is to be treated as a fraternal beneficiary association certificate, the next question is that of the eligibility of the plaintiff, or, of her right to enforce payment of the benefits thereof. Under the constitution of defendant, and by the statute, no beneficiary could have or obtain any vested interest in the benefits of a certificate of a member, until the same had become due and payable by the death of such member. In that respect it differs from an ordinary life insurance policy. It speaks

with reference to the conditions existing at the time of the death of the member whose life was insured.

The question immediately in issue was before the St. Louis Court of Appeals in Order of Railway Conductors v. Koster, 55 Mo. App. 186. It was held that the divorced wife of the deceased member was not entitled to the benefits. That court said, at page 193: "That a benefit certificate is different from an ordinary life insurance policy, viz., that it is testamentary in its character, is well settled and has been repeatedly decided in this State. [Masonic Benevolent Assn. v. Bunch, 109 Mo. 560, 580; Expressmen's Aid Society v. Lewis, 9 Mo. App. 412; National American Assn. v. Kirgin, 28 Mo. App. 80.] That proposition is conceded by the appellant, but her counsel claims that, although the designation of the beneficiary speaks from the death of the assured, it does not follow that a descriptive designation must continue applicable to the person described up to the time of death. But what is descriptive designation, after all? When the descriptive designation is used to identify *the person*, the fact that it applies to the person no longer at the date of death is immaterial, because the beneficiary is the person and the description of his or her status a mere identification of the person; but when the status of the beneficiary is the main, if not the sole, inducement for the insurance, the name becomes a mere descriptive designation and the object of the benefit is, and always remains, in the person filling the particular status."

In Modern Woodmen v. Patterson and Johnston, 196 Mo. App. 346, the benefits under the certificate were payable to a stepson of the member, as a dependent upon the member, but he had ceased to be a dependent before the death of the member. It was held that he could not recover, and that "such beneficiary must be a dependent at the death of the member," to be entitled to the benefits.

Counsel for plaintiff have cited a number of cases from other jurisdictions holding that the divorced wife of a member of a fraternal beneficiary association was entitled to recover the benefits. [Courtois v. Grand Lodge, 135 Cal. 552; Overhiser v. Overhiser, 14 Colo. App. 1; Farra v. Braman, 171 Ind. 529; White v. Brotherhood, 124 Iowa, 293; Brown v. Ancient Order, 208 Pa. 101; Snyder v. Supreme Ruler, 45 L. R. A. (N. S.) 209.] The last named is a Tennessee case. An examination of these cases shows that, in the main, the result reached was based upon the provisions of the constitution of the particular association, or the governing statute, or upon conditions creating some equitable right in the claimant.

There are many cases in which it has been held that where a certificate of a fraternal beneficiary association is made payable to a person as wife, when she ceased to be a wife, she no longer remains the beneficiary, and removes herself from the class of persons en-

titled to receive the proceeds of a certificate. This was held in these cases, where by divorce she ceased to be the wife of the member: Tyler v. Odd Fellows Mutual Relief Assn., 145 Mass. 134; Bush v. Modern Woodmen, 182 Iowa, 515; Brotherhood of Railroad Trainmen v. Taylor, 29 Ohio, C. C. 171; Giffin v. Grand Lodge, 99 Neb. 589; Dahlin v. Knights of Modern Maccabees, 151 Mich. 644; Green v. Green, 147 Ky. 608; Lawson v. United Benevolent Assn. (Tex. Civ. App.), 185 S. W. 976; Thomas v. Locomotive Engineers' Assn. (Iowa), 183 N. W. 628.

In Thomas v. Locomotive Engineers' Association, supra, there is a review of cases involving the immediate question at issue. The underlying distinction between the two classes of cases is in the main founded upon the character of the governing rules of the association, and the applicable statutory provisions. The distinction rests upon the difference between a mere requirement that a certificate shall issue to only one of a certain class, and a requirement that death benefits under a certificate shall go only to one of a certain class. In the case at bar, the statute, Section 6403, and the constitution of defendant, restricted, "confined," the payment of death benefits to those belonging to the classes named. The statute and constitution of defendant association do not include a wife divorced, as such, as a person to whom death benefits may be paid. In determining the question of the status, the cases make no distinction founded upon the fact that the divorced wife, claiming benefits, obtained the divorce for the fault of her husband. Discussion of this may be found in Appleby v. Grand Lodge, 225 S. W. (Tex.) 588. Under the terms of the statute itself and of the constitution of the defendant association, no such distinction can be made. There is no claim attempted to be made upon the theory that plaintiff was a dependent upon the deceased. There is no question here, as there was in many cases, of dispute between two or more claimants. There is the bare question whether the plaintiff, who had ceased to be the wife of the deceased, is entitled to enforce payment of the death benefits under the certificate sued on.

Our conclusion is that she is not so entitled, and the judgment is affirmed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.