W. O. SCHMIDT, Administrator, etc., Appellee, v. HANNAH HAUER, Appellant.

**Insurance:** RIGHTS OF BENEFICIARY. A valid designation of a beneficiary in a policy of insurance remains so throughout the life of the policy although the insurable interest or relationship of the beneficiary has ceased, unless the policy otherwise provides, or the insured has exercised his right to make a change: and this rule is applicable to the case of a divorced wife. The policy in suit, of which a constitutional provision is made a part, is considered and it is held that neither expressly, nor by implication, does it declare that by a change in the status of the beneficiary the designation shall become void.

*Appeal from Scott District Court.*— HON. J. W. BOLLINGER, JUDGE.

FRIDAY, MAY 17, 1907.

REHEARING DENIED TUESDAY, OCTOBER 20, 1908.

ACTION in equity originally brought by plaintiff, as administrator of the estate of Mathias Hauer, to recover on a beneficiary certificate issued by the Grand Lodge of the Ancient Order of United Workmen of Iowa to his intestate. The beneficiary named in the certificate was Hannah Hauer, conceded to have been at the time of the issuance thereof the wife of said Mathias Hauer. Before the death of Mathias the parties were divorced, but no change was made or attempted to be made in the name of the beneficiary. The Grand Lodge appeared and admitted its liability on the certificate, made averment that it did not know who was entitled to the avails thereof, and paid the money into court to be disposed of on final hearing as the court might order. Hannah Hauer, having been made a party defendant, appeared and filed an answer and cross-petition, the averments thereof being, in substance, that the proceeds of the certificate were due and payable to her, and she prayed a decree accordingly. To such answer and cross-petition the plaintiff interposed a general equitable demurrer, and this was sustained. Defendant elected to stand on the ruling, and, decree being entered in favor of plaintiff, she appealed.— *Reversed.*

*Henry Thuenen,* for appellant.

*Henry Vollmer,* for appellee.

BISHOP, J.— The certificate in question was issued to Mathias Hauer, plaintiff's intestate, in February, 1891, and, as we have seen, Hannah Hauer, the beneficiary named therein, was then his wife. The parties were divorced in April, 1904, and Mathias died, intestate, in June following. As the record stands, the only question for determination is, who is entitled to the fund in court, being the avails of the certificate? It is the rule in this State that the designation of a beneficiary in a policy of life insurance valid in its inception remains so, although the insurable interest or re-

lationship of the beneficiary named has ceased unless it is otherwise stipulated in the contract. *White v. Brotherhood, etc.,* 124 Iowa, 293. And such is the rule elsewhere. *Courtois v. Grand Lodge,* 135 Cal. 552 (67 Pac. 970, 87 Am. St, Rep. 137) *Overhiser v. Overhiser,* 63 Ohio St. 77 (57 N. E. 965, 50 L. R. A. 552, 81 Am. St. Rep. 612) *Insurance Co. v. Schaefer,* 94 U. S. 457 (24 L. Ed. 251); Bacon on Benefit Societies, section 253. The question in the case is to be answered, therefore, from an inspection of the contract, and as it shall be determined for or against the existence of a stipulation included therein forbidding payment to or recovery by defendant. An examination of the certificate of membership or policy discloses that it goes no further than to witness that Hauer had been admitted to membership and with the right " to designate the beneficiary to whom the sum of two thousand dollars shall at his death be paid." This then appears: " He designates as beneficiary under the terms hereof Hannah Hauer bearing to him the relation of wife." It is alleged in the petition, however, and admitted in the answer, that the constitution of the society shall be taken to be a part of the contract. And in the answer the section of the instrument pertinent to the subject, being section 47, is set forth. In substance, that section reads as follows: Upon the death of a member the person designated as beneficiary, " provided such beneficiary shall in every instance be one or more members of his family, or are related to or are dependent upon him," shall be entitled to receive of the beneficiary funds, etc.

It will be observed that the question at issue in the case does not arise out of any pleading on the part of the Grand Lodge. There is no contention on its part to the effect that a recognition of Mrs. Hauer as beneficiary notwithstanding the divorce would have operation to violate its contract rights or defeat any purpose or policy of its organization. It came into the action, took note of the contention between the administrator representing the heirs on the one side and

the divorced wife on the other, and, declining to take any part in the controversy, paid to the clerk the amount called for by the certificate and went on its way, indifferent as to what might be the result of the action as between the contending parties. The line of controversy between the parties active in the case is quite sharply drawn. The plaintiff contends that as matter of law the proviso in the constitutional provision, the substance of which we have set forth, must be taken to mean that the relationship between the member and the beneficiary named by him must continue down to the moment of death in order that the latter may be entitled to the fund; while, on the other hand, it is the contention of defendant that by the proviso no more was intended than that it should be made to appear that a proper relationship existed at the time of the selection. Accepting section 47 of the constitution as part of the contract, it is clear that the question in the case — that is, whether or not there appears " a stipulation to the contrary "— must be answered from a consideration of its provisions, because otherwise than in said section there is nothing in the contract which can be said to even make reference to the subject. Now, it is cardinal doctrine in the law of contracts that, in arriving at a proper construction, courts must be guided by the intention of the immediate parties as evidenced by the circumstances of the making and the language employed. We say immediate parties, because, as related to the subject-matter here in hand, it must be remembered that the beneficiary named, or other person entitled to stand in that relation, can have no right or interest except such as may flow from the contract when it shall have been ascertained and established. And, there having been no agreement for a modification, it is the intention of the parties existing as of the time when the contract was entered into that is controlling. Accordingly, we are required to treat the question made as though it arose under an issue tendered by the society itself. Approaching the question directly, a member has the right, as

we have seen, to select his beneficiary, and it cannot be said that the contract in any express language puts restriction on this right.    The proviso found in section 47 does not in terms either forbid or require.    Plainly enough, the section was intended to have post-mortem operation only, and, as we read it, the negative expression of the proviso found therein goes no farther than to warn the member in advance that in making his selection he must designate a person coming within some one of the favored classes specified; that, otherwise, the beneficiary designated by him will not be recognized when time for recognition comes.    So, too, the section has no relation — at least not in any direct way — to the subject of a voluntary change in beneficiaries.    That subject is covered in a subsequent section, also set out in the answer, in which the manner and form of proceeding by the member — and he may act alone in the premises — is prescribed, and the section closes by declaring that " changes made in any other manner than as provided for in this section shall not be valid."    Now, as section 47 cannot be said to amount to an agreement in terms that, in the event of a change in status of the beneficiary originally named, the designation of such person shall be no longer of any force or validity, we may proceed to inquire whether such is the effect of the section by necessary implication.    We say in particular that the implication must be a necessary one, because, if the contract is susceptible of two interpretations, the one most favorable to the promisee must be adopted. Bacon on Benefit Societies, section 179.

And in this connection the beneficiary named, properly so in the beginning, who has been allowed to stand in such ostensible relation by the member, although he might have brought about a change on his own initiative had he so desired, is entitled to be regarded as the promisee.    What, then, is there in the contract to imply an intention of the parties that a change of status in relationship should of itself, *eo instante,* and inexorably, work a change in the beneficiary from

the person named to the heirs of the member, no other proper person being subsequently substituted? We grant that, if payment on the part of the Grand Lodge of the amount designated in the certificate could be regarded as in fulfillment of a promised gift or donation, and section 47 was to be read only as a post-mortem direction respecting the person or persons entitled to the gift, there would be some force in the contention of appellee. But we have a contract to deal with, and recovery is sought on that contract as matter of right. And section 47 was incorporated into and became a part of the contract when made. Charging our minds with the language used, and gathering up the relevant facts and circumstances, proper to be considered, under which the contract was made, we face the inquiry: What was the intention of the parties? First, it may fairly be said that the parties contemplated that the contract relations entered into between them should be permanent; that is, they should end only with the death of the member.

Next, it may also fairly be said that within their contemplation the designation of the wife as beneficiary should be permanent; this, of course, subject to the right of the member to effect a change should he so elect, and subject also to the contingency of survivorship. Taking a negative view of the situation, it cannot be said on any theory that the parties had in contemplation a possible future change in the relationship between the member and his wife otherwise than by death, and therefore that by including section 47 in the contract it was intended to fix in advance what the rights of the parties should be in the event of such change. This must be so because in our society the relation of marriage is by universal intention a permanent one. The relation once established, not only do courts conclusively presume that permanency will ensue, but, on like reason, all parties brought into conscious contact with the relation in a contractual way will be presumed, in the absence of clear and unequivocal expression to the contrary, to look forward to a

continuation thereof until terminated by death. It follows from this view, and the soundness thereof does not even seem to be open to question, that it is impossible to conclude that the proviso in section 47 was intended to be " a stipulation to the contrary," making provision for a change in beneficiary in the event of a change in status. As a change in status was not within the contemplation of the parties, the subject could not in any way have entered by intention into the contract, because without contemplation there could not have been intention. And the absence of an intention " to stipulate to the contrary " is further evidenced as we think by the subsequent conduct of the parties. Without suggestion of such a contract stipulation, the Grand Lodge paid to the clerk the amount called for by the certificate, and, wrapping itself in a cloak of indifference, went on its way. It is not likely that this would have occurred if it had been the understanding of its officers and attorneys that a payment of the benefit fund to Mrs. Hauer was forbidden by the fundamental law of the order, which law had been carried into and formed part of the contract. As to Hauer, in view of the fact that he made no change when he might have done so on his own initiative, it is not unreasonable to infer that his consideration for the woman who had been his wife for many years prompted him to leave matters as they were; the amount of the policy to go to her in the nature of a legacy in the event that she survived him. Moreover, we think that a fair analysis of the language of the proviso in section 47 serves to throw doubt on the position taken by appellee. If, as argued by counsel, the section speaks only from the death of the member, and as it is the only provision on the subject, the argument would seem to lead to the conclusion that a total stranger might be selected as beneficiary, and the selection would be good conditioned only upon the establishment of a relationship as specified at some moment of time before death intervened. Whatever view might be taken of such a provision on legal grounds, it is quite im-

probable that those who framed the section intended that it should have any such effect.

A conclusion for error in the ruling appealed from finds direct support in these cases: *Overhiser v. Overhiser,* 14 Colo. App. 1 (59 Pac. 75); *Courtois v. Grand Lodge, supra.* In our view the case of *Tyler v. Association,* 145 Mass. 134 (13 N. E. 360) relied upon by appellee, is not in point. There the divorced wife of the member, named as beneficiary in the policy, was denied a recovery, but on the ground that the statutes of the State governing fraternal insurance associations, under which statute the defendant there charged was organized, as well as the laws of the association, forbade payment of benefits except " for the purpose of defraying the expenses of the sickness and burial of its members, and rendering pecuniary aid to the families of deceased members, or to their heirs."

Without pursuing the subject further, it follows from what we have said that the demurrer interposed to the answer and cross-petition should have been overruled. Accordingly the judgment is reversed, and the case ordered remanded for further proceedings not inconsistent with the views expressed in this opinion.—*Reversed.*