ARTHUR A. HOPP et al., appellees, v. ELLA A. RAIN et al., appellants.

No. 49335.

(Reported in 88 N.W.2d 39)

FEBRUARY 11, 1958.

MODIFIED AND REHEARING DENIED APRIL 11, 1958.

Smith, Peterson, Beckman & Willson, of Council Bluffs, for appellants.

White & White, of Harlan, for appellees.

894

WENNERSTRUM, J.—Plaintiffs in an action in equity sought to impress a trust upon certain land now held in the name of the defendant Ella A. Rain. Prior held land had been purchased with the proceeds of money left in trust with a bank by the will of the grandfather of the plaintiffs but which was turned to Ella A. Rain, formerly Ella A. Hopp, the lifetime beneficiary, by reason of a release given to the trustee and signed by Ella A. Hopp and her children at the time of the filing of the final report of the bank as trustee. The plaintiffs' claim is based on a purported oral agreement between the mother and the children relative to the holding of the property originally purchased and consequently the subsequently acquired real estate. The trial court found for the plaintiffs and held the trust had not been terminated. The defendants have appealed.

John J. Mass died testate on May 10, 1915. His will made provision for leaving a one-ninth share of his estate to the Silver City State Bank, as trustee, with the provision the income therefrom should be paid to his daughter, Ella, during her lifetime. It was further therein provided that " '* * * after the death of my said daughter, Ella Hopp, I give, devise and bequeath the principal of said one-ninth part or share of my said residuary estate to be equally divided, share and share alike, between the children of my daughter, Ella Hopp.' " The plaintiffs, Arthur A. Hopp and Hazel M. Kaven, are the two children born to Ella A. Hopp-Rain and her first husband, now deceased, Frank Hopp.

In 1934 the Silver City State Bank was discharged as trustee by reason of an application apparently made in the probate proceedings in the estate of John J. Mass. The application was entitled "Trusteeship of Ella Hopp, Under the Will of John J. Mass." The application was made by Ella A. Hopp and the verification was signed and sworn to by the applicant and by Arthur A. Hopp and Hazel M. Kaven, her two children. We deem it of importance in the determination of the present litigation and it is substantially set out in full.

"Now comes Ella Hopp, the above named person in the Trusteeship of Ella Hopp, and shows to the Court as follows:

"That said funds are held under will of her father John J.

Mass, admitted to probate * * *; That the funds at last report, on March 29, 1934, amounted to $8301.19, in hands of Trustee, Silver City State Bank and same cannot be invested to earn above 3% and same are wholly unproductive to her, by reason of such low rate of income, after taxes and expenses are paid. Further, that all the children of Applicant are now past 21 years of age, which Children, two in number are as follows, Arthur A. Hopp, age 25 years. Hazel M. Kaven age 23 years, and married, being all the children.

"That age of applicant is 47 years, and both said children join in this Application and agree to all the statements herein.

"Petition[er] says that *they desire to invest said funds in farm lands,* and *that it [is] much better for all concerned that said funds should be ordered paid to her for such investment and without restriction,* all the children agreeing to the same. That they can use the funds to better advantage, and to hold the funds as now situated is almost to render them of no value whatever to any of them. That the Applicant and family now reside at Minden, Iowa, but desire to use the funds for the purchase of farm and *for their use during her lifetime.*

"WHEREFORE; Petitioner, prays an order that Trustee shall pay said funds to her, without further limitation or delay, and that she be allowed to receive the same for the use indicated. Dated on this 2nd day of August, 1934. Ella A. Hopp, Petitioner; [Emphasis supplied]

"State of Iowa

"Mills County,

"Ella Hopp, Arthur Hopp, and Hazel M. Kaven, being each first duly sworn on their oath sats [states] that the allegations in the foregoing Application contained are al[l] true as they verily believe. Further, said Arthur A. Hopp and Hazel M. Kaven, approve the Application and join in the prayer thereof, and agree as all the children of Ella Hopp that she shall be permitted to at once receive all of the funds held by the Trustee and we release the Trustee from any claim therefor, now or at any future date. [Signed] Hazel M. Kaven, Arthur A. Hopp, Ella A. Hopp.

"Subscribed in my presence and sworn to before me by Ella Hopp, Arthur A. Hopp and Hazel M. Kaven, on this 2nd day of August, 1934.

H. M. Logan

(Seal)                    Notary Public, Mills County, Iowa."

On August 16, 1934, one of the judges of the district court in and for Mills County, Iowa, signed an order approving the application heretofore set forth, which order is in part as follows:

"It is therefore ORDERED, ADJUDGED AND DECREED, that the Silver City State Bank, as Trustee of Ella Hopp, aforesaid, be and said trustee is authorized and ordered to pay the funds on hand, $8301.19, on hand at the last report, with any additions thereto or proper deductions therefrom for cost and expenses, to Ella Hopp, and on completion of said payment and filing of her voucher and receipt for the same, the trustee shall then be finally discharged, all former reports and acts approved, the trusteeship closed and all bonds of the trustee forever released and finally exonerated."

On August 18, 1934, the Silver City State Bank, as trustee in the trusteeship of Ella Hopp, filed a final report showing a net balance then on hand of $8214.19. In the final report of the bank there is incorporated the following:

"Trustee, following the order and decree * * * above referred to and relying thereon, pay the full sum remaining, as above shown to Ella Hopp, and which sum is received by her in final settlement and to close the trusteeship finally and forever."

On the same paper and following the report of the Silver City State Bank, as trustee, there is set out the following:

"We, the undersigned, Ella Hopp, under above Trusteeship, and Arthur A. Hopp and Hazel M. Kaven, the latter two persons being all of her children, each hereby acknowledge full and final payment from the Silver City State Bank as Trustee, of all the funds and property held by said Trustee, under the Will of John J. Mass, deceased, wa[i]ving all notice of said Final Report.

"We each approve said payment, request that the same be made to Ella Hopp *and waive all our rights, present or future, to any of the said funds and ratify the payment and settlement*

*above shown, in every respect, waiving all claim to said funds
or any part thereof, present or future interest or right or pos-
sibility therein. The intention being to fully settle the Trustee-
ship finally close the same and forever release the Trustee from
any liability or claim thereto by us, or either of us and from
any person claiming by or from us or either of us, the sole heirs
the only children of Ella Hopp.*

"Dated on this 18th day of August, 1934.

"[Signed] Ella A. Hopp. Hazel M. Kaven| Arthur A.
Hopp"

Receipt verified. (Emphasis supplied.)

Thereafter on September 27, 1934, an order approving the
final report of the Silver City State Bank, as trustee, in the
trusteeship of Ella Hopp was signed by one of the judges of the
district court in and for Mills County, which is in part as fol-
lows:

"The Court adjudges that full payment has been made to
Ella Hopp of all funds held by the Trustee in said Matter,
under Order of Court heretofore made for such payment, and
that final voucher, receipt and waiver of notice from Ella Hopp
and all of her children, is on file and same is approved and ad-
judged to be full notice, waived by each of them with request
for the approval of said report;

"It is therefore; ORDERED, ADJUDGED AND DECREED That said
Final [report] be and the same is fully approved and the settle-
ment therein shown; The Trusteeship is hereby closed, the Trus-
tee discharged with release and complete exoneration of all bonds
herein given, and final discharge of the Trustee from any liabil-
ity under said Trusteeship."

On or about February 25, 1935, Ella Hopp and her then
husband, Frank Hopp, purchased and took title to a 112-acre
farm located near Harlan, Iowa, for a consideration of $14,005.
This farm is referred to in the record as the Juhl farm. At or
about the same time they gave a mortgage to the Shelby County
State Bank for $6000 apparently to cover the balance due on
the farm. This land was rented by Mrs. Hopp and her hus-
band to their son, Arthur, one of the plaintiffs in the present
action. The rental was on a 50-50 share basis. The parents paid

the taxes, insurance and the cost of the necessary improvements to the buildings. On March 2, 1940, the mortgage referred to was released and on or about the same time Ella and Frank Hopp sold 30 acres of the 112 acres to Arthur Hopp, one of the plaintiffs, for the sum of $6700. A new mortgage for $6000 was given to one Wise covering all the land in question and Arthur Hopp assumed this mortgage as a part of his payment of the purchase price of the 30 acres. He continued to rent the remaining 82 acres from his parents until 1947. On March 2, 1945, the Wise mortgage was released and the son, Arthur, received a warranty deed to the 30 acres. On July 5, 1947, the 82 acres were conveyed by Ella A. and Frank H. Hopp to Arthur and Jennie Hopp. On the same date Frank H. and Ella Hopp purchased and took title to another piece of land which contained 162 acres. This land is referred to in the record as the Churchill land. The purchase price for this land was $26,500. There was applied on this purchase price $2500 received from the sale of other property owned by Frank and Ella Hopp near Minden, Iowa. A mortgage for $8000 was placed on the 162-acre tract on July 3, 1947. On May 27, 1949, 40 acres of the Churchill land was sold by Mr. and Mrs. Hopp for $4250. Arthur Hopp also rented the Churchill land from his parents on a 50-50 share-crop arrangement and they made such improvements on this property as they deemed necessary and also paid the taxes.

Frank Hopp died on July 7, 1951, and under his will his estate was left to his wife, Ella A. Hopp. On September 28, 1951, the mortgage heretofore given on the Churchill property was released, the amount paid on the mortgage indebtedness being received in part from the proceeds of a $1000 life insurance policy on the life of Frank Hopp and also from income from the farm and from other proceeds from his estate.

The testimony of Ella A. Rain is to the effect that since 1934 neither Arthur A. Hopp nor Hazel M. Kaven had ever made any claim or demand regarding the proceeds of the trust fund which she received during that year. She further testified that in 1949 the Hopps sold a portion of the Churchill land and at that time neither of the children made any claim to the proceeds received from the sale.

I. It is the contention of the defendants the trust created by the will was terminated by the consent of the parties and by the order of the district court. Consequently we must give consideration to the question whether under the will the parties interested in the trust could terminate it. And in addition to the foregoing question we should determine whether, under the provisions of the papers signed in connection with the termination of the bank trusteeship, it was the intention of the parties to terminate the trust in its entirety or whether these papers were merely prepared and signed for the purpose of releasing the original trustee. We shall first give consideration to the wording of the several papers filed in connection with the effort to release the bank trustee. It will be noted in the application it is stated: "Petition[er] says that *they desire to invest said funds in farm lands, and that it [is] much better for all concerned that said funds should be ordered paid to her* [petitioner, the life beneficiary] *for such investment and without restriction * * *.*" Later in the application it is stated "but desire to use the funds for the purchase of farm *and for their use during her lifetime.*" (Emphasis supplied.)

It will be observed in this application it is proposed to use the funds for the purchase of a farm and that it would be "* * * better for all concerned that said funds should be paid to her [petitioner] for such investment * * *." Reference is made to "all concerned." This surely does not mean just the life beneficiary but must also mean the remaindermen. And that a trust of some kind was to be continued is evidenced by the use of the further words "* * * and for their use during her lifetime." The reference to "her lifetime" must have been in anticipation of the continuing life estate of Ella A. Hopp as life beneficiary. Undoubtedly the petition for the termination of the bank trusteeship was prepared by an attorney but the life beneficiary signed it and is bound by the words therein used.

Attention is called to the fact in the verification to the petition it is stated: "* * * and we release the trustee from any claim therefor, now or at any future date." This claimed release could only refer to the bank trustee and not to any other trustee to whom the funds might be entrusted. This must be true because it was signed by Ella A. Hopp along with the two children.

Mrs. Hopp would not sign a release to herself. So the purported release necessarily must have had reference only to the bank.

And the same reasoning we have applied relative to the purported release in the application or petition would also apply to the receipt signed by the parties. It acknowledged the receipt only of "* * * full and final payment from the Silver City State Bank as Trustee, of all the funds and property held by said Trustee, * * *."

It is true in the receipt previously referred to it is stated: "We each approve said payment * * * to Ella Hopp and waive all our rights, present or future, to any of the said funds * * * waiving all claim to said funds or any part thereof, present or future interest or right or possibility therein. * * *." That all this had reference to the bank trusteeship is apparent by the further statement, as follows: "The intention being to fully settle the Trusteeship finally close the same and forever release the Trustee from any liability or claim thereto by us, or either of us * * *." This receipt was signed by Ella Hopp, the life beneficiary under the trust, and also by Arthur A. Hopp and Hazel M. Kaven, the children and remaindermen. There would be no purpose in Ella Hopp signing and releasing any claim to the funds if she had a then intention of taking over the funds as her own. The receipt was not a contract between the life tenant and the remaindermen. Neither can this instrument be considered an assignment and transfer by the remaindermen to the life tenant. From a thorough study of the papers filed in the probate trusteeship we can only reach the conclusion they referred to the termination of the bank trusteeship and nothing more.

II. The intention of a testator regarding the termination of a trust is paramount to the wishes of the beneficiaries and a testamentary trust will not usually be terminated by agreement or consent and contrary to the intentions of the testator and while it remains active and its purposes are unaccomplished. 96 C. J. S., Wills, section 1047, pages 670, 671; Moxley v. Title Ins. & Tr. Co., 27 Cal.2d 457, 165 P.2d 15, 163 A. L. R. 838; McDonald v. Fulton Trust Co., 71 App. D. C. 36, 107 F.2d 237. An owner of property has the right to do with his property as he wishes, and it is within his power, so long as

he does not violate the rule against perpetuities or some other rule of law of equal potency, to postpone the possession of the corpus of his estate by his beneficiaries even though the title thereto and the right to future possession was vested. Lafferty v. Sheets, 175 Kan. 741, 745, 746, 267 P.2d 962, 966; where it appears the creator of a trust had in view a valid purpose which would be defeated by a termination of the trust before the time set by him the courts will not decree a termination so long as the purpose is capable of being accomplished, Hay v. LeBus, 317 Mich. 698, 710, 27 N.W.2d 309, 314; where a trust is active and its purposes and objects have not been fully accomplished and its termination would not best accomplish the testator's intent, the trust cannot be terminated even with the approval of all parties in interest. Whitney v. Whitney, 317 Mass. 253, 257, 57 N.E.2d 913, 915. See also Allen v. First National Bank & Trust Co., 319 Mass. 693, 67 N.E.2d 472, 473; Springfield Safe Deposit & Trust Co. v. Stoop, 326 Mass. 363, 95 N.E.2d 161, 163; Hamilton v. Robinson, 236 Mo. App. 289, 151 S.W.2d 504, 508; Fidelity Union Trust Co. v. Margetts, 7 N. J. 556, 82 A.2d 191, 197, 199; Baer v. Fidelity Union Trust Co., 132 N. J. Eq. 333, 28 A.2d 275, 277; Brown v. Fidelity Union Trust Co., 128 N. J. Eq. 197, 15 A.2d 788, 792; In re Estate of Cannistra, 384 Pa. 605, 121 A.2d 157, 163, 164; Feiler v. Feiler, 149 Ohio St. 17, 77 N.E.2d 237.

For a historical study regarding the right of termination of a testamentary trust attention is called to Speth v. Speth, 8 N. J. Super. 587, 74 A.2d 344. See also 54 Am. Jur., Trusts, section 90, page 87; Annotations, 37 A. L. R. 1420, 1426; 45 A. L. R. 743, 751; 123 A. L. R. 1427, 1432; 163 A. L. R. 856, 858; 169 A. L. R. 459, 466, 471; 50 A. L. R.2d 1171, 1175; Bogert, Trust and Trustees (1948), volume 4, section 1002, pages 502 to 508.

Section 337·(2), page 1021, Restatement of the Law of Trusts, states: "If the continuance of the trust is necessary to carry out a material purpose of the trust, the beneficiaries cannot compel its termination." And in commenting relative to a trust for successive beneficiaries where the purpose of the trust has not been accomplished it is stated at page 1025: "Thus, if

one of the purposes of the trust is to deprive the beneficiary entitled to income of the management of the trust property for the period during which he is entitled to the income, the trust will not be terminated during the period, although both of the beneficiaries are of full capacity and desire to terminate it. Similarly, if by the terms of the trust it is provided that the trustee shall make payments out of income or principal to a beneficiary if the beneficiary should be in need, the trust will not be terminated although that beneficiary and all the other beneficiaries are of full capacity and desire to terminate it."

In Olsen v. Youngerman, 136 Iowa 404, 411, 113 N.W. 938, 941, this court followed the general principles heretofore set forth and stated: "The consensus of opinion seems to be that an active trust wherein the interests of the several beneficiaries have not vested should not be closed, for that this cannot be done without defeating the manifest intention of the trustor, and the facts of this case bring it clearly within this rule. As was observed in Cuthbert v. Cuthbert, 136 N. Y. 326 (32 N.E. 1088, 18 L. R. A. 745), trusts are usually created for the purpose of withholding from the beneficiaries or other interested parties the control and disposition of the principal of the fund for reasons which appear sufficient to the trustor, and they are not usually regarded with satisfaction by the persons who are deprived of the possession of the estate. This, however, furnishes no ground for disregarding the conditions on which the bounty is to be bestowed, nor for refusing to carry out the expressed design of the party creating the trust. * * *."

A holding to the same effect is found in Shillinglaw v. Peterson, 184 Iowa 276, 285, 167 N.W. 709.

From a review of the authorities heretofore set forth and their application to the facts in the instant case we have concluded: (1) the original trust was an active one at the time it is claimed it was terminated, (2) the purposes of the trust were at that time unaccomplished and were not impossible of fulfillment, (3) the parties herein interested could not enter into an agreement for the termination of the trust which this court could approve, (4) a testator has the right to project his wishes into the future if he does not violate fundamental prin-

ciples of law or statutes, and (5) to hold the trust had been terminated would not be in keeping with the manifest intent of the testator.

III. Family settlements, if fairly entered into, are favored. In re Estate of Dayton, 246 Iowa 1209, 1214, 71 N.W.2d 429, and authorities cited. We cannot conclude the papers signed in connection with the termination of the bank trusteeship were for the purpose of effecting anything more than the releasing of the bank trustee and did not constitute a family settlement. The fact the life beneficiary and the remaindermen authorized the investment of the funds received from the original trustee by the mother, the life beneficiary, in farm property, does not terminate the trust. It merely continued the trusteeship in a new form. In any event beneficiaries under a will may not defeat a trust. In re Estate of Swanson, 239 Iowa 294, 306, 31 N.W.2d 385, and cases cited.

IV. The defendant maintains an express trust in real property cannot be established by parol evidence. We do not deem it necessary to comment upon this question inasmuch as we have heretofore held the trusteeship had not been and could not be terminated. Likewise we must hold the plaintiffs have not waived their claim to the trust funds and are not barred by laches by reason of their failure to make earlier claim to the trust property. The controlling factor is the trust which was set up by the will and not the delayed claim of the remaindermen.

V. Where a life tenant receives possession of a fund he or she becomes a trustee or quasi trustee for the benefit of the remaindermen. Heintz v. Parsons, 233 Iowa 984, 990, 9 N.W.2d 355; Williams v. Morrison, 242 Iowa 1054, 48 N.W.2d 666; 31 C. J. S., Estates, section 34, pages 42, 43. This is the situation we find in the instant case. The defendant mother is the trustee of the property acquired and now held by her and in the proportion as determined by the trial court.

VI. The trial court in its findings and decree determined the defendant Ella A. Hopp-Rain and her former husband, Frank H. Hopp, had contributed 25.84% from sources not obtained from the investment of the trust fund and which eventually resulted in the purchase of the property now held in Ella A. Rain's name. It further held and decreed that 74.15% of the

present property now held by her resulted from the use of the trust fund in making the prior and present investments here involved. The decretal part of the court's determination is in part as follows:

"Ella Rain, the defendant, is decreed to be the owner of a life estate in all said real estate and is decreed to be the owner in common in fee of an undivided interest therein equal to 25.84% of the total thereof.

"Arthur A. Hopp and Hazel M. Kaven, the plaintiffs, are decreed to be the owners in common in equal shares of an undivided interest in said real estate in fee equal to 74.15% of the total thereof, subject to the life estate of the plaintiff [defendant] Ella Rain.

"Robert Rain husband of Ella Rain is decreed to have no interest in said real estate except such inchoate right in the interest of Ella Rain as may exist by reason of his status as spouse of said defendant."

The defendants maintain they should have the benefit of the increase of value in the real estate involved over and above the original corpus of the trust. The trial court gave them the benefit of the contribution made by them. We hold any increase in valuation will be reflected in the proportionate share in the whole property as determined by the court. We find no basis for reversal on this contention.

VII. It has been the repeated holding of this court a resulting trust will be decreed in favor of the owners of the funds where property is acquired by reason of their use and to establish such a trust the evidence must be clear, satisfactory and convincing. Sinclair v. Allender, 238 Iowa 212, 221, 222, 26 N.W.2d 320; Shaw v. Addison, 239 Iowa 377, 384, 28 N.W.2d 816; Hill v. Havens, 242 Iowa 920, 926, 48 N.W.2d 870. We are satisfied the plaintiffs have established their claim by the required degree of proof.

As the result of the authorities cited and the proof presented we must hold the plaintiffs have the interest in the property held in the name of their mother in the proportion decreed by the trial court.

We make no determination of any claimed interest that might arise by reason of the birth hereafter of a child or children to Ella A. Hopp-Rain and her present husband or any claimed interest of any child or children who might hereafter be adopted by them.—Affirmed.

All JUSTICES concur except PETERSON, C. J., who takes no part.

SMITH, J., not sitting.