Marcene F. LYNCH, Individually and as Administrator of the Estate of James Joseph Lynch, Plaintiff-Appellee,

v.

Harvey BOGENRIEF, as Secretary of the Board of Trustees of the City of Des Moines, Iowa, Defendant,

and

Pauline V. Lynch, Defendant-Appellant.

No. 2–57291.

Supreme Court of Iowa.

Jan. 21, 1976.
Rehearing Denied Feb. 17, 1976.

Walter W. Selvy and David L. Phipps, of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for defendant-appellant.

Lee Gaudineer, Jr., of Austin, McDonald, Myers,· Peterson & Gaudineer, Des Moines, for plaintiff-appellee.

Heard by MOORE, C. J., and RAWLINGS, REES, UHLENHOPP and REYNOLDSON, JJ.

REYNOLDSON, Justice.

This controversy concerns the retirement system death benefits of a deceased Des Moines fireman, claimed by an ex-wife whom he named beneficiary during their marriage, and by his widow as the administrator of his estate, and (alternatively on an assignment theory) in her own right. Trial court ruled the benefits should go to the estate. Mindful of the ancient admonition that hard facts may make bad law, we are compelled to reverse.

Decedent James Lynch was appointed fireman for the City of Des Moines March 1, 1950. He then nominated Pauline V. Lynch to receive his benefits under the retirement system. See chapter 411, The Code. On the designation form Lynch wrote in this claimant's name, and wrote the word "wife" in that portion of the form which stated, "Said nominated beneficiary has an insurable interest in my life by reason of being my [*wife*]." This beneficiary designation was never changed and remained on file in the office of the board of fire trustees at the date of Lynch's death on November 29, 1972. At that time his accumulated contributions totaled $9,504.37.

Decedent and Pauline had three children, born in 1942, 1948 and 1950. In 1955 decedent and Pauline were divorced. He paid child support during the children's minority and paid $50 per month alimony until his death. Following a subsequent marriage and divorce, in 1960 Lynch married Marcene, now his widow and administrator of his estate. Their children were born in 1963 and 1967. Marcene and the children were completely dependent on decedent for support. Pauline had been employed until at least the year prior to trial, but testified she was afflicted with emphysema and unable to work.

In an *ex parte* proceeding the board of fire trustees adopted a resolution providing the accumulated contributions should be paid to the estate of James Lynch "unless the prior designation of beneficiary by James Joseph Lynch, as a matter of law,

requires that the aforementioned accumulated contributions be paid to Pauline Lynch."

When payment was not made, plaintiff administrator brought action in district court for writs of certiorari and mandamus to require defendant secretary of the board of fire trustees to make payment. Defendant Pauline V. Lynch was joined as an indispensable party. The board paid the funds into court. The controversy has proceeded between the two claimants.

At trial, evidence was produced to show the firemen's beneficiary designations were never called up for review by the firemen until after this litigation developed. Other evidence was introduced, over objections never ruled on, that Lynch had not seen his ex-wife Pauline for more than eleven years, he did not like her, and he was going to quit paying alimony as soon as he retired. Other testimony related to statements made by Lynch after he became terminally ill indicating he thought these benefits would go to his then wife and minor children.

Trial court filed findings of fact and conclusions of law determining 1) § 411.6(9) grants discretionary power to the board of trustees to pay either the estate or the nominated beneficiary, and 2) when Pauline V. Lynch was divorced from Lynch she ceased to be his dependent, had no insurable interest in his life, and decedent's designation of beneficiary became null and void.

Issues the parties raise here relate to statutory construction, the effect of the language contained in the beneficiary designation, and the effect of the divorce and the words employed in the divorce decree.

### I. Statutory construction.

Chapter 411, The Code, is entitled "RETIREMENT SYSTEMS FOR POLICEMEN AND FIREMEN." Section 411.6, "Benefits", comprises 14 subdivisions and extends over three and one half pages of the Code.

Section 411.6(8) deals with "Ordinary death benefit."

"Upon the receipt of proper proofs of the death of a member in service, there shall be paid to such person having an insurable interest in his life as he shall have nominated by written designation duly executed and filed with the respective board of trustees:

a. His accumulated contributions * * *

b. * * *

If there be no such nomination of beneficiary, the benefits * * * shall be paid to his estate * * *."

Section 411.6(9) provides an "Accidental death benefit":

"If * * * the death * * * was the natural and proximate result of an injury or disease incurred in or aggravated by the actual performance of duty * * * there shall be paid, in lieu of the ordinary death benefit provided in subsection 8 * * * to his estate or to such person having an insurable interest in his life as he shall have nominated by written designation duly executed and filed with the respective board of trustees the benefits set forth in paragraphs 'a', 'b', and 'c' of this subsection:

a. His accumulated contributions; and in addition thereto—

b. A pension equal to one-half of the average final compensation of such member shall be paid to his spouse, children or dependent parents * * *.

c. * * *."

Appellant Pauline V. Lynch, the nominated beneficiary, asserts trial court erred in concluding the § 411.6(9) language, " * * * to his estate or to such person * * * as he shall have nominated by written designation * * * ", vested the board of trustees with a discretionary power to select either the fireman's estate or his designated beneficiary as recipients of the statutory benefits. Each party relies on those various rules of statutory construction which support her statutory interpretation. Both,

however, agree the interpretive polestar is legislative intent. Rule 344(f)(13), Rules of Civil Procedure.

■ Section 411.6(8) plainly provides in case of an ordinary (nonemployment-related) death, accumulated contributions are to be paid to the designated beneficiary, or if there is none, to the estate. The succeeding subsection states in case of employment-related ("accidental") death, certain benefits shall be paid "in lieu of" those specified in preceding subsection 8. We are convinced the language of § 411.6(9) "to his estate or to such person * * * as he shall have nominated * * *" is simply a shorthand, albeit inexact, effort to indicate a legislative intent that such benefits pass to the estate where no beneficiary is designated, as more fully expressed in § 411.6(8).

■ If the statute were given any other interpretation, a designated beneficiary of a fireman who died from a non-duty-related cause would be assured of receiving the accumulated contributions, while the designated beneficiary of a fireman who died from a work-related cause would face the uncertainty of an administrative decision. Of course the individual fireman would never be secure in the knowledge the persons he wished to provide for would receive his accumulated contributions. This interpretation of the statute, which would create an absurd result and long-range unfairness, should be avoided. *Iowa Nat. Indus. Loan Co. v. Iowa State Dept. of Revenue*, 224 N.W.2d 437, 440 (Iowa 1974); *Northern Natural Gas Company v. Forst*, 205 N.W.2d 692, 695 (Iowa 1973). Ordinarily, the usual meaning is to be given the statutory language used, but the manifest intent of the legislature will prevail over the literal import of the words employed. *Id.*

We note when the legislature vested discretion in the board of trustees as to certain beneficiaries [see § 411.6(8)(d) and (e)], it did so in very specific language; we conclude it did not intend discretion to be exercised by the board where it was not specifi-

cally granted. See *In re Estate of Wilson*, 202 N.W.2d 41, 44 (Iowa 1972).

In seeking legislative intent to support trial court's statutory interpretation, plaintiff administrator strongly relies on the following portion of § 411.2:

"In any city in which the firemen or policemen are or shall be appointed under the civil service law of this state, there are hereby created and established two separate retirement or pension systems for the purpose of providing retirement allowances only for firemen or policemen of said cities who shall be so appointed after the date this chapter takes effect, or benefits to their dependents. * * *"

The administrator argues this language discloses a legislative intent to make benefits available "only" to firemen or their dependents, not to provide a windfall for firemen's divorced spouses. We believe the legislative intent in this section was to restrict allowances to "only" firemen and policemen (and their dependents) "who shall be appointed after the date this chapter takes effect."

The intent to benefit only dependents, contended for by the administrator, is belied by subsequent sections which permit accumulated contributions to pass to decedent's estate. Of course in such event ultimate disposition could be governed by a will. Creditors and non-dependents might potentially share. There is no reason to suppose the legislature was not fully aware of these alternatives when it statutorily directed accumulated contributions should go to the decedent's estate in absence of written designation left by the fireman who dies from either a duty-related or a non-duty-related cause.

Nor are we persuaded by the administrator's argument the retirement program is supported by tax revenues, is a special statutory creation, and therefore the fireman should not necessarily have an unqualified right to control disposition of the accumulated contributions. These contributions

are built up by payroll deductions, not charitable donations from taxpayers. The fireman should have as much control over disposition of these funds as does the owner of any other personal property. See *Hopp v. Rain*, 249 Iowa 891, 900–901, 88 N.W.2d 39, 44 (1958).

We are unable to sustain trial court's ruling insofar as it is based on statutory construction.

## II. *Effect of divorce.*

Trial court's reliance on the divorce of Pauline V. and James Lynch as a basis for its ruling involved two concepts: 1) she ceased to be a dependent and therefore was excluded by the language of § 411.2, supra, and 2) she no longer had an "insurable interest" in Lynch's life as required by § 411.6(9) ("shall be paid * * * to his estate or to such person having an insurable interest in his life as he shall have nominated by written designation * * *.")

■ Referring now to the first concept, supra, trial court in its conclusions adopted the administrator's interpretation of § 411.-2, The Code. In division I, above, we have already stated our reasons for not accepting that interpretation. What we there said controls disposition of this subsumed issue. Nowhere in chapter 411 is the word "dependent" defined. Finding as we do the statute does not require persons who may receive accumulated contributions to be dependents, we do not reach the question whether a person receiving alimony is a "dependent" of a person paying alimony. See, however, *Trammel v. Brotherhood of Locomotive Firemen*, 126 Mont. 400, 403, 253 P.2d 329, 331 (1953); *Rose v. Brotherhood of Locomotive Firemen & Enginemen*, 80 Colo. 344, 352, 251 P. 537, 540 (1926).

In the case before us the surviving spouse and children are receiving the pension provided by § 411.6(9)(b). Had the legislature intended the § 411.6(9)(a) accumulated contributions would in every event pass to the same beneficiaries it surely would have employed the same precise language.

■ We next consider the second concept underlying trial court's rationale the divorce precludes Pauline from receiving the benefit: the legal termination of the marriage in some way terminated her status as a "person having an insurable interest in his life." The words "insurable interest" are undefined in chapter 411. Obviously the reference to insurance compels us to turn to insurance law for precedent.

■ One need not be a dependent to have an insurable interest in the life of another; a pecuniary interest is sufficient. If one has a reasonable expectation of advantage in the continuation of another's life, an insurable interest exists. *Conn. Mutual Life Ins. Co. v. Schaefer*, 94 U.S. 457, 24 L.Ed. 251 (1877), 2 Appleman, Insurance Law and Practice § 762, p. 119 (1966) [hereinafter cited as Appleman]; 44 C.J.S., Insurance § 203a, p. 904. It follows a creditor has an insurable interest in the life of his debtor. *Reilly v. Penn. Mut. Life Ins. Co. of Philadelphia*, 201 Iowa 555, 558–559, 207 N.W. 583, 584 (1926).

Under these rules, it is plain a divorced wife receiving alimony, as a creditor and as one having an advantage in the continued life of her former husband, has an insurable interest in his life.

■ Even where alimony is not involved, the life insurance rule in most jurisdictions, including Iowa, holds a spouse named beneficiary, and designated as such in a policy when issued, will be deemed the beneficiary of the policy even though subsequently divorced from the insured. See *Davis v. Travelers Insurance Company*, 196 N.W.2d 526 (Iowa 1972); *Edgington v. Equitable Life Assur. Soc.*, 236 Iowa 903, 907, 20 N.W.2d 411, 413 (1945); *Schmidt v. Hauer*, 139 Iowa 531, 533, 111 N.W. 966, 967 (1907); *White v. Brotherhood of American Yeomen*, 124 Iowa 293, 295, 99 N.W. 1071, 1072 (1904); Appleman, supra, § 804, pp. 250–269; 44 Am.Jur.2d, Insurance § 1740, pp. 650–653; 46 C.J.S., Insurance § 1160, pp. 43–46.

We have carefully examined the authorities collected and cited by the administrator. A few turn on court-made rules which stand in stark contrast to the great weight of authority. See *Williams v. Williams*, 262 S.W.2d 111, 112 (Tex.Civ.App.1953), articulating a principle applied mainly in Texas. Still others proceed on statute or policy provisions specifying the relationship required in order to receive payment of death benefits. See *United Mut. Life Ins. Co. v. Ward*, 201 Minn. 70, 73, 275 N.W. 422, 423 (1937); *Smith v. Travelers' Protective Ass'n*, 319 Mo. 1120, 1124, 6 S.W.2d 870, 871 (1928). In Kentucky a peculiar divorce restoration-of-property statute permits the result contended for by this administrator. *Warren v. Spurlock's Adm'r.*, 292 Ky. 668, 669, 167 S.W.2d 858, 859 (1943). And in Michigan a specific statute provides unless the rights of the wife to the insurance proceeds are determined in the divorce decree the policy "shall thereupon become and be payable to the estate of the husband or to such named beneficiary as he shall affirmatively designate * * * ." See *Minnesota Mut. Life Ins. Co. v. Hendrick*, 316 Mich. 253, 256, 25 N.W.2d 189, 191 (1946). None of these decisions is persuasive here.

■ Finally, we have examined the provisions of the divorce decree to determine if it controlled the rights of Pauline V. Lynch in the accumulated contributions. Specific provisions governed disposition of the real estate, household furniture and fixtures. The final sentence provided "That each of the parties hereto shall have the title to and possession of their own personal belongings."

There is no mention of retirement or death benefits or any language of relinquishment or waiver of statutory right, or rights as designated beneficiary, in any death benefits.

Lynch unquestionably had a property interest in his accumulated contributions, including the right to change designated beneficiary. Pauline V. Lynch at time of the divorce maintained an insurable interest in Lynch's life and a contingent interest in his accumulated contributions as his then designated beneficiary. Construing the above quoted language of the divorce decree to its greatest permissible reach, it only insured the remaining personal property interests of the respective parties would continue unchanged. See *Simmons v. Simmons*, 272 S.W.2d 913, 916 (Tex.Civ.App.1954).

### III. Language of the beneficiary designation.

■ Administrator Marcene Lynch argues when Lynch completed the designation form by writing the word "wife" in that portion which stated, "Said nominated beneficiary has an insurable interest in my life by reason of being my *wife*" he made a conditional designation "and if, upon the member's death, the condition is not met, the nomination must stand annulled, void, and for naught." In short, she asserts the beneficiary must have the same insurable interest in the member's life when the benefits are paid that she had when designated.

We cannot read this requirement into the statute, nor do we find any support for this rationale in the law of insurance. Ordinarily the word "wife" or "husband" following a beneficiary's name is held to be merely a description of the person, not a limitation on the named individual's right to the proceeds. *White v. Brotherhood of American Yeomen*, supra, 124 Iowa at 294, 99 N.W. at 1072; *Gerhard v. Travelers Insurance Company*, 107 N.J.Super. 414, 425, 258 A.2d 724, 730 (1969); *Simmons v. Simmons*, supra, 272 S.W.2d at 915; *Stokes v. McDowell*, 70 Wash.2d 694, 697, 424 P.2d 910, 912 (1967); Appleman, supra, § 802, pp. 238–240; Annot., 175 A.L.R. 1220, 1226.

All of the words on the designation form were printed with the exception of those blanks in which Lynch wrote in the beneficiary's name and the word "wife". We cannot distinguish this situation from that in which decedent might have simply designated "Pauline V. Lynch, wife." In the latter case, Iowa precedent indicates use of

the word "wife" is only descriptive and not exclusive. *White v. Brotherhood of American Yeomen*, supra.

*IV. Other issues.*

 The administrator argues trial court was right nonetheless because Lynch made an oral assignment of the accumulated contributions to his surviving spouse, citing *Petty v. Mutual Benefit Life Ins. Co.*, 235 Iowa 455, 15 N.W.2d 613 (1944). The evidence offered at trial by the widow merely indicated Lynch thought she and the children would receive these benefits.

Although it is true no special form of words is necessary to effect an assignment, *Petty*, supra, 235 Iowa at 465–466, 15 N.W.2d at 618, this evidence does not show an intention *to assign*, but rather Lynch's misapprehension about either his beneficiary designation or the statutory law.

Neither are we persuaded the statutory language we interpreted in division I creates a situation analogous to a conveyance to two parties thus creating a tenancy in common, so that one half of the benefits would pass to each of the contending parties.

Our decision on the above issues does not require us to reach the due process issue raised by Pauline V. Lynch based on lack of notice of the proceedings before the board of trustees.

Other ancillary issues raised in the excellent briefs filed by both parties have been considered and found not controlling.

We arrive at our holding with the dissatisfied realization the result reached probably frustrates the intentions Lynch failed to legally implement. The long-range policy issues inherent in these situations are best resolved by the legislature which could amend the statutory language or adopt a statute similar to the Michigan legislation referred to in division II, supra. See also § 633.271 ("If after making a will the testator is divorced or the marriage is dissolved, all provisions in the will in favor of the testator's spouse are thereby revoked. * * * ").

We reverse and remand to trial court with directions to enter judgment for Pauline V. Lynch in conformance herewith.

Reversed and remanded.